IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case No. 3:14-cr-91 |
| v. | |
| Terry Michael Williams-Bey, a/k/a Terry Michael Williams, a/k/a T M Williams Bey, a/k/a T Williams Bey, a/k/a Terrance Williams, a/k/a Terrence Williams, a/k/a Muhammad Shabazz, | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS** |
| Defendant. | |

## INTRODUCTION

Defendant Terry Michael Williams-Bey moves to suppress evidence discovered during a search of his workplace locker.  He[1] concedes that the search of the locker was permissible under the Fourth Amendment, but argues that the seizure of a locked safe, which later was determined to contained a revolver and ammunition, without a warrant violates the Fourth Amendment.  The United States has filed a brief in opposition.

The matter came on for an evidentiary hearing on October 9, 2015.  The court, having carefully considered the evidence and the arguments of the parties, now makes the following findings of fact and legal conclusions.

## FINDING OF FACTS

1.    On October 4, 2014, armed with a search warrant, law enforcement

_____

[1] Williams-Bey raised the issue of whether there was consent to search the locker at the suppression hearing.  His lawyer concedes that the Radisson had authority to open the locker for the agents.

1

agents, including ATF Special Agent Russell Traurig, went to Williams-Bey's room at Centre, Inc. in Fargo, North Dakota.

2.      Pursuant to the search warrant, agents searched Williams-Bey's room and two vehicles for 1 to 1 ½ hours looking for a firearm they had reason to believe Williams-Bey recently purchased.

3.      No firearm was located in Williams-Bey's room or vehicles.

4.      At approximately 5:00 p.m., Special Agent Traurig was directed by Resident Agent in Charge Steven Hall to go to the Radisson where Williams-Bey was employed as a night security officer.

5.      While Special Agent Traurig was at the Radisson other agents remained with Williams-Bey.

6.      Special Agent Traurig met with the hotel manager, Erik Olson, and told him he was looking for an item that was illegal for Williams-Bey to possess.

7.      The hotel manager informed Special Agent Traurig that Williams-Bey was scheduled to work at 11:00 p.m. that night.

8.      The hotel manager told Special Agent Traurig that Williams-Bey had been assigned a locker (#39) along with a padlock and key for use as an employee at the hotel.

9.      On July 30, 2014, Williams-Bey signed a "Locker Room Padlock and Key Issue/Turn in Form, which contained the following search provision:

> I understand that the locker I use while employed at the Radisson is subject to random searches by Management or a designee.

2

10.   Either the hotel manager or the janitor used a key to open locker #39 in Special Agent Traurig's presence.

11.   The locker was divided into a lower, longer vertical portion and a smaller upper portion.  Inside the upper potion of the locker Special Agent Traurig saw a safe.

12.   During the search of Williams-Bey's room and vehicles agents had located other safes as well as an empty box that matched the appearance of the safe discovered in the locker.

13.   Special Agent Traurig told the hotel manager he suspected Williams-Bey might have hidden a firearm in the safe.

14.   The hotel manager told Special Agent Traurig he did not want the safe at the hotel and to remove the safe from the hotel premises.

15.   A law enforcement agent contacted Williams-Bey for consent to open the locked safe.

16.   Williams-Bey declined to give the agents permission to open the safe.

17.   Special Agent Traurig and RAIC Hall removed the safe and Williams-Bey's signed consent form in anticipation of requesting a search warrant.

18.   Special Agent Traurig brought the safe from the hotel to the ATF office.

19.   On October 7, 2014, Special Agent Lowell Erickson applied for a search warrant from Magistrate Judge Karen Klein.

20.   Magistrate Judge Klein issued a search warrant for the safe.

21.   Inside the safe, officers found a Charter Arms, model Bulldog, .44 special caliber revolver, bearing Serial Number 14-35611, and .44 special caliber

ammunition.

Williams-Bey has two felony convictions: Criminal Possession of a Controlled Substance from Orange County, New York dated May 7, 1991; and Second Degree Burglary from Queens County, New York dated June 8, 1999. He is charged in this case with possession of a firearm and ammunition by a convicted felon.

**DISCUSSION**

Williams-Bey moves to suppress the firearm and ammunition located in the safe seized from his locker at the Radisson on the ground that the locked safe was seized in contravention of the Fourth Amendment.   Williams-Bey contends that the agents did not have consent to seize the safe and no exception to the warrant requirement applies. The United States counters that Williams-Bey had no reasonable expectation of privacy in the contents of the locker and thus no standing to challenge the introduction of the evidence, and that even if he has standing, Radisson management had the authority to consent to seizure of the safe.

## I.        Reasonable Expectation of Privacy in Employee Locker

Application of the Fourth Amendment does not turn on the nature of the property interest involved, but on the reasonableness of the expectation of privacy. Whether a defendant can validly claim the Fourth Amendment protections against warrantless searches is governed by a two-step inquiry.[2]  First, the person must have an actual or subjective expectation of privacy, and second that expectation must be one society is prepared to recognize as reasonable.[3]  If the government's conduct does not

---

[2] United States v. Long, 797 F.3d 558, 564 (8th Cir. 2015).

[3] Id.

violate a person's reasonable expectation of privacy, then it does not constitute a Fourth Amendment search and accordingly no warrant is required.  The burden of proving a reasonable expectation of privacy rests with the defendant.[4]

Although the Eighth Circuit has not specifically addressed an employee's expectation of privacy in a workplace locker, other courts have done so.  An individual may have a reasonable expectation of privacy in a locker secured with a lock when there is no notice or practice shown that would alert the person to expect unconsented searches.[5] However, an employee has no expectation of privacy when the employee is on notice that the locker is subject to searches.[6] Here, Williams-Bey signed a form in which he was on notice that the locker was subject to random searches "by Management or a designee."   Despite Williams-Bey's argument to the contrary, absent a reasonable expectation of privacy, there has been no search under the Fourth Amendment.

## II.    Consent to Search/Seizure

Assuming *arguendo*, even if Williams-Bey possessed a reasonable expectation of privacy in the locker, a warrantless search and/or seizure is constitutional if there is consent either by the defendant or a third-party who possessed common authority over

---

[4] Id.

[5] United States v. Speights, 557 F.2d 362, 365 (3d 1977).

[6] United States v. Broadus, 7 F.3d 460, 464 (6th Cir. 1993) (no reasonable expectation of privacy in a jacket pocket placed in co-worker's locker at the post office); United States v. Bunkers, 521 F.2d 1217, 1221 (9th Cir. 1975); Chicago Fire Fighters Union, Local 2 v. City of Chicago, 717 F.Supp. 1314, 1319 (N.D. Ill. 1989) (firefighters do not have a reasonable expectation of privacy when a General Order issued by the Fire Chief states that the firefighters' lockers would be searched without a warrant to discover violations of rules and regulations); Faulkner v. State, 564 A.2d 785, 788 (Md. 1989) (rejecting employee's Fourth Amendment challenge to a warrantless search of workplace locker conducted by employer and law enforcement because company policy provided that management could conduct general searches at least upon suspicion of alcohol or drugs).

the premises or effects sought to be inspected.[7]  The government bears the burden of establishing the third-party's common authority.[8]

Without question, the hotel manager or the janitor, as designee, had common authority to open the locker door and look inside.  Williams-Bey believes, however, that law enforcement impermissibly seized the safe from the locker. The distinction between a search and a seizure, although often overlooked, is important in some cases:

> Although our Fourth Amendment cases sometimes refer indiscriminately to searches and seizures, there are important differences between the two. . . . The Amendment protects two different interests of the citizen—the interest in retaining possession of property and the interest in maintaining personal privacy.  A seizure threatens the former, a search the later.  As a matter of timing, a seizure is usually preceded by a search, but when a container is involved the converse is often true.  Significantly, the two protected interests are not always present to the same extent; for example, the seizure of a locked suitcase does not necessarily compromise the secrecy of its contents, and the search of a stopped vehicle does not necessarily deprive its owner of possession.[9]

The distinction is importation in this case for three reasons.  First, no Fourth Amendment seizure took place. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."[10] "By requiring some *meaningful interference* with an individual's possessory interests in property, the Supreme Court inevitably contemplated excluding *inconsequential interference* with an individual's possessory interests.[11]

---

[7] <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974).

[8] <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 181 (1990).

[9] <u>United States v. Clutter</u>, 674 F.3d 980, 984 (8th Cir. 2012) (quoting <u>Texas v. Brown</u>, 460 U.S. 730, 747-48 (1983) (Stevens, J., concurring), cited in <u>Arizona v. Hicks</u>, 480 U.S. 321, 328 (1987)).

[10] <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984)).

[11] <u>United States v. Va Lerie</u>, 424 F.3d 694, 706 (8th Cir. 2005) (emphasis in original).

In this case, the safe in question was in storage at Williams-Bey's workplace locker at the Radisson. The hotel manager, who held common authority over the locker, consented to the seizure. Indeed, the hotel, in asserting their common authority over the safe, told Special Agent Traurig to remove the safe from the premises. Recognizing hotel management did not have common authority to consent to a search of the locked safe, the agents had two choices: Ask Williams-Bey for permission to open the safe, or seek a search warrant. Williams-Bey refused to allow the agents to open the safe. Thus, the agents turned to their second option - apply for a search warrant. The agents were diligent in obtaining a search warrant for the safe. Agents discovered the safe on Saturday, October 4, 2014. They applied for a search warrant less than three days later on Tuesday, October 7, 2014. This temporary seizure combined with the agent's diligence in obtaining a warrant did not meaningfully interfere with Williams-Bey's possessory interests.[12]

Second, the officers had probable cause to believe the safe contained evidence of a crime. An employee at the Outdoorsman store confirmed that Williams-Bey picked up a .44 caliber revolver on October 3, 2014. The officers also knew that Williams-Bey was a person prohibited by law from possessing a firearm. Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant to examine its contents, seizure of the property is permitted if the exigencies of the circumstances demand it or some other

---

[12] Britton v. Maloney, 196 F.3d 24, 35-36 (1st Cir. 1999) (elapse of three days between when rifle seized and it was used in a pending criminal proceeding did not unduly interfere with individual's possessory interests in violation of the Fourth Amendment); see United States v. Laist, 702 F.3d 608, 616 (11th Cir. 2012) (concluding 25-day delay between seizure of computer and hard drive and search warrant was not unreasonable).

recognized exception to the warrant requirement is present."[13]   The recognized exceptions to the warrant requirement present in this case are third-party consent and exigent circumstances.

In upholding the warrantless seizure of a suitcase while officers obtained a search warrant, the Sixth Circuit Court of Appeals noted: "[t]his was a plain old-fashioned seizure of a person's effects, based on probable cause, in order to prevent the disappearance of evidence and so that a warrant could be obtained and a search conducted."[14] Williams-Bey was scheduled to work at 11:00 p.m. the night the safe was discovered.  The officers had probable cause to believe the locked safe could contain the .44 caliber revolver they were looking for. The exigencies of the circumstances combined with the hotel manager's consent to the seizure render the seizure of the safe from the workplace locker reasonable and not in contravention of the Fourth Amendment.

Third, Special Agent Traurig's limited purpose in temporarily seizing the safe while investigating a crime–to avoid the destruction of evidence–is relevant to the validity of the hotel manager's third-party consent.[15]   The safe was in a storage locker accessible to Williams-Bey and hotel management.  Williams-Bey was scheduled for work that night. Agents had already searched Williams-Bey's residence and vehicles looking for the firearm.  The hotel manager urged Special Agent Traurig to take the safe with him.  Special Agent Traurig reasonably relied on the hotel manager's authority to consent to a temporary seizure of the safe.

---

[13] United States v. Place, 462 U.S. 696, 701 (1983).

[14] United States v. Respress, 9 F.3d 483, 486 (6th Cir. 1993).

[15] United States v. Clutter, 674 F.3d 980, 985 (8th Cir. 2012).

## DECISION

Williams-Bey had no expectation of privacy in his workplace locker because he was on notice, and explicitly agreed in writing, that the locker would be subject to searches by hotel management or its designee. The hotel manager had the authority to consent to a seizure of the safe, in contrast to a search of the safe, because he had joint control or access to the locker containing the safe and it was reasonable for the agents to believe the manager had joint control of or access to the safe.[16]

For the foregoing reasons, the seizure of the safe on October 4, 2014, was not constitutionally unreasonable in light of the hotel manager's common authority to consent, the exigencies of the situation and potential destruction of evidence, the officers' probable cause to believe the safe contained evidence of a crime, and their intent and application less than three days later for a search warrant.  Defendant Williams-Bey's motion to suppress evidence is **DENIED**.

**IT IS SO ORDERED.**

Dated this 9th day of October, 2015.


_____/s/   Ralph R. Erickson_____
Ralph R. Erickson, Chief District Judge
United States District Court

---

[16] United States v. James, 571 F.3d 707 (7th Cir. 2009) (upholding seizure of a safe from the defendant's mother's house that contained, in part, a gun used during a robbery on the grounds that defendant's mother had common authority to consent to the seizure).